# In the United States Court of Federal Claims

No. 16-1629 C

(Filed: July 8, 2021)

```
* * * * * * * * * * * * * * * * * * * * *
                                        *
PEDRO BARAJAS, et al.,                  *
                                        *
                Plaintiffs,             *
                                        *
        v.                              *
                                        *
THE UNITED STATES,                      *
                                        *
                Defendant.              *
                                        *
* * * * * * * * * * * * * * * * * * * * *
```

*Molly A. Elkin*, McGillivary Steele Elkin LLP, of Washington, D.C., for plaintiffs.

*Tanya B. Koenig*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, with whom were, *Reginald T. Blades, Jr.*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Chad A. Readler*, Principal Deputy Assistant Attorney General, all of Washington, D.C., for defendant.

## MEMORANDUM OPINION

**SOMERS**, Judge.

On December 9, 2016, Pedro Barajas and other plaintiffs ("Plaintiffs"), all of whom are current or former employees at the Federal Correctional Complex in Lompoc, California ("FCC Lompoc"), filed this action alleging violations of the Federal Employees Pay Act ("FEPA" or "Title 5") and the Fair Labor Standards Act ("FLSA"), over a period spanning six years prior to the filing of the complaint and on an ongoing basis, related to an uncompensated night shift pay differential.[1]  ECF No. 7 ("Am. Compl."). On December 5, 2017, the government filed a motion for partial summary judgment, asserting that all of Plaintiffs' FEPA and FLSA claims for the period prior to February 20, 2015, are barred by res judicata.  ECF No. 15 ("Def.'s Mot. for Partial Summ. J.").

The motion has been fully briefed, and the Court held oral argument on the motion on April 19, 2018. The case was reassigned to the undersigned judge on January 4, 2021, and re-argument of the government's motion was scheduled for May 18, 2021. ECF No. 32. On May

---

[1] Plaintiffs filed an amended complaint on March 8, 2017.

13, 2021, the parties jointly moved the Court to postpone the re-argument and stay further proceedings to allow for settlement negotiations. ECF No. 33. After further review of the briefing, relevant caselaw, and the transcript of the previous oral argument, the Court concurred with the parties that re-argument was unnecessary and, in addition, on May 14, 2021, denied the government's motion for partial summary judgment.[2] ECF No. 34. This memorandum opinion sets forth the Court's reasons for denying the government's motion.

## BACKGROUND AND PROCEDURAL HISTORY

The relevant background is restated here from the government's proposed findings of uncontroverted facts, Def.'s Mot. for Partial Summ. J. at 4-7, and Plaintiffs' responses, objections, or clarifications thereto, ECF No. 19 ("Pls.' Resp. to Def.'s Proposed Facts") Plaintiffs are current and former employees of the Bureau of Prisons ("BOP"), each of whom is or was a correctional officer or correctional worker at FCC Lompoc assigned to work overtime shifts. *Id*. at 1-2. The Council of Prison Locals, American Federation of Government Employees ("AFGE" or "union") was the national union and exclusive representative for all bargaining unit employees of FCC Lompoc.[3] *Id*. at 2. A "Master Agreement" constituted the collective bargaining agreement between FCC Lompoc and the union.[4] *Id*. Relevant to the instant matter, a night shift differential is a Title 5 premium pay paid to those eligible employees who work between 6:00 p.m. and 6:00 a.m. *Id*. at 3; *see also* 5 U.S.C. § 5545(a).

On September 10, 2012, the union filed a grievance. Pls.' Resp. to Def.'s Proposed Facts at 3. According to Plaintiffs, the grievance was limited to an unpaid work time claim, also known as a Portal-to-Portal claim, that was brought to recover backpay and other damages for uncompensated work performed before and after some officers' shifts. *Id*. It included claims brought under the FLSA but "did not address payment for work performed during a scheduled shift or premium payments, such as a night shift differential, for work performed during those scheduled shifts." *Id*. Plaintiffs particularly stress the "***off-the-clock***" scope of the grievance, as opposed to the instant action covering work "***on-the-clock and during***" a scheduled shift. *Id*. at 5. According to Plaintiffs, the union "sought a remedy only for the specific violations outlined in the body of the grievance, and also requested that the 'Agency correct its practices so as to be compliant with applicable law.'" *Id*. at 6 (quoting ECF No. 15-1 at Appx15). In other words, Plaintiffs assert that "the issues in the Portal-to-Portal grievance for which the Union sought relief . . . are not at issue in the instant case." *Id*.

Plaintiffs further argue that the terms of the settlement agreement that resolved the grievance confirm this. On November 7, 2012, the union invoked arbitration, during which it entered into a settlement agreement with the Justice Department, BOP, and FCC Lompoc ("agreement"). *Id*. Plaintiffs emphasize that the opening paragraph of the agreement provides

---

[2] The Court also denied the government's motion to suspend discovery, as the denial of partial summary judgment rendered the proposed stay of discovery moot. ECF No. 34.

[3] There are two AFGE Locals that represent bargaining unit employees at FCC Lompoc, AFGE 3048 and 4048. Pls.' Resp. to Def.'s Proposed Facts at 2. For purposes of this opinion, they are collectively referred to as the "union." All correctional officers, including Plaintiffs, who are working or worked in bargaining unit job positions during the relevant times, are bargaining unit employees represented by the union. *Id*. at 3.

[4] The briefings indicate the original Master Agreement was signed in 1998 and replaced in July 2014 by a "substantially identical" agreement for all relevant sections. Pls.' Resp. to Def.'s Proposed Facts at 2.

2

that it was made "in resolution of the grievance . . . alleging that [FCC Lompoc] failed to pay overtime compensation pursuant to the [FLSA] . . . for time spent by bargaining unit employees performing work before and/or after their scheduled shifts . . . ." *Id*. at 7 (quoting ECF No. 15-1 at Appx1). The terms of the agreement provide that the federal government would pay "$4,000,000.00 to resolve all claims for unpaid FLSA overtime for work performed before and/or after scheduled shifts by . . . bargaining unit employees at FCC Lompoc" through February 20, 2015. Def.'s Mot. for Partial Summ. J. at 6-7 (quoting ECF No. 15-1 at Appx2). The agreement's release of claims further provides:

> The Unions and the Agency understand and agree that in consideration for the payment made by the Agency and the Agency's compliance with the terms of this Agreement, the Grievants remise, release and forever irrevocably discharge the United States government, the Bureau of Prisons, the Agency and their officers, agents and employees, and each of them, separately and collectively, from the claims asserted in the grievance covered by this Settlement Agreement for the time period October 9, 2009 through the date this agreement is fully executed.

ECF No. 15-1 at Appx4. Plaintiffs point out that while the agreement "on pre-shift and post-shift uncompensated work was executed on February 20, 2015, the agreement did not provide for or contemplate Title 5 or FLSA backpay for work performed during a scheduled shift or for premium payments, such as night shift differentials, on that work." Pls.' Resp. to Def.'s Proposed Facts at 8.

Plaintiffs filed the instant action on December 9, 2016, and assert that the claims here "are ***limited to*** the defendant's failure to pay the night shift differential under Title 5, and the defendant's failure to properly calculate plaintiffs' regular rate of pay because it excludes the night shift differential under the FLSA for scheduled on the clock work." *Id*. at 9. Moreover, according to Plaintiffs, their amended complaint "does not include any claims related to off-the-clock pre-shift or post-shift uncompensated work." *Id*. Stated differently, in the instant case, Plaintiffs allege "that they were not provided with a premium night shift differential for work performed during shifts between the hours of 6 p.m. and 6 a.m., even though they were already provided regular compensation for these shifts" and "also claim that they were not compensated at the proper overtime rate for overtime hours in workweeks in which they should have earned a night shift differential for work performed during shifts between the hours of 6 p.m. and 6 a.m." *Id*. at 11.

The government moved for partial summary judgment on the theory that Plaintiffs' FLSA and FEPA claims for the period prior to February 20, 2015, "should have or could have been brought in their prior grievance" and, therefore, are barred by res judicata. Def.'s Mot. for Partial Summ. J. at 2, 8-14. As discussed more fully below, the motion turns on whether the current suit involves the same transactional facts as the grievance and settlement agreement. The government argues they do; Plaintiffs disagree.

3

# DISCUSSION

## A. Legal Standard

### 1. Summary Judgment

Rule 56 of the Rules of the Court of Federal Claims ("RCFC") provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the . . . court of the basis for its motion" and must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing former version of Fed.R.Civ.P. 56(c)). Material facts are those that "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute over a material fact to be genuine, thus precluding summary judgment, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." RCFC 56(c)(1)(A)-(B).

Importantly, the judge's function at the summary judgment stage "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. Moreover, in considering a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "Summary judgment is properly granted only where there is no genuine issue of material fact . . . ." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).

### 2. Res Judicata

Res judicata, or claim preclusion, "applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)). Under res judicata, "a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Stearn v. Dep't of Navy*, 280 F.3d 1376, 1380 (Fed. Cir. 2002) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). It "serves to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and . . . encourage reliance on adjudication.'" *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

In applying res judicata, the Federal Circuit "is guided by the Restatement (Second) of Judgments," wherein "a claim is defined by the transactional facts from which it arises."

*Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323-24 (Fed. Cir. 2008) (citation omitted).  The Restatement provides:

> (1)  When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> (2)  What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24.  The Federal Circuit has observed that a common set of transactional facts is to be identified "pragmatically." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed. Cir. 2000) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(2)).  In identifying which facts constitute transactional facts, courts "have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same, factual allegations.'" *Id*. (citations omitted).  Relatedly, the Supreme Court long ago observed that "[o]ne of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other." *United States v. Haytian Rep.*, 154 U.S. 118, 125 (1894).

In addition, the Federal Circuit—in reversing a district court's finding of claim preclusion—cited the Supreme Court for the proposition that "claim preclusion does not bar a claim merely because it could have been raised in a prior action between the parties that was resolved by a final judgment on the merits . . . ." *Acumed LLC*, 525 F.3d at 1326 (citing *Cromwell v. County of Sac*, 94 U.S. 351, 356 (1876) ("On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.").

In reviewing the instant case, the Court is also mindful that "res judicata is not readily extended to claims that were not before the court, and precedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial." *Kearns v. Gen. Motors Corp.*, 94 F.3d 1553, 1557 (Fed. Cir. 1996); *see also Brown v. Felsen*, 442 U.S. 127, 132 (1979) ("Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth.  For the sake of repose, res judicata shields the fraud and the cheat as well as the honest person.  It is therefore invoked only after careful inquiry.").

B. **Analysis**

The briefing, as well as the transcript from oral argument,[5] makes clear that this motion for partial summary judgment comes down to a single question: whether the instant case is based on the same set of transactional facts as the grievance. With relative ease, the Court answers this question in the negative.

It should be noted at the outset that the government rests nearly its entire claim preclusion argument on this Court's reasoning in *Allensworth v. United States*, 122 Fed. Cl. 45 (2015). At first glance, *Allensworth* may seem to be an appropriate guidepost—albeit, not binding—in the instant matter. The case concerned current and former correctional officers employed by BOP at the Federal Correctional Institution in Texarkana, Texas, who sought a declaratory judgment, back pay, and other relief for the government's alleged violations of the FLSA by failing to pay overtime for work performed during daily, uncompensated fifteen-minute rest breaks, as well as its alleged violations of Title 5 for failing to pay Sunday premium pay. *Allensworth*, 122 Fed. Cl. at 46-47. Similar to the case at bar, in *Allensworth*, the employees' union filed a grievance and, thereafter, invoked arbitration. *Id*. at 48. The grievance in *Allensworth* "addressed continuing violations of the overtime laws pursuant to FLSA and premium pay under Title 5" and "primarily complained of the BOP improperly requiring employees 'to perform work prior to and after the completion of their shifts,' otherwise known as 'Portal–to–Portal' issues." *Id*. (citations omitted). Before arbitration commenced, the parties executed a settlement agreement in which the union agreed that "no other action or suit with respect to the claims that are set forth in the grievance . . . will be filed in, or submitted to, any court or any administrative forum." *Id*. (citations omitted). When the *Allensworth* plaintiffs filed suit in this Court for uncompensated work performed during their off-the-clock, fifteen-minute rest breaks, the government moved for summary judgment invoking res judicata.

Like the instant matter, *Allensworth* turned on an analysis of the third prong of the res judicata analysis. But while the government here views *Allensworth* as safe harbor, the Court finds it clearly distinguishable. Reviewing the transactional facts, the *Allensworth* court took issue with the plaintiffs' attempt to bring one claim for FLSA overtime violations that occurred before the beginning and after the end of a shift via grievance and a completely separate claim in this Court for FLSA overtime violations that occurred during an unpaid break in the middle of the shift. *Id*. at 50. From a pragmatic standpoint, it made sense to avoid "defin[ing] the scope of these new claims so narrowly as to allow multiple legal proceedings to adjudicate FLSA overtime claims for different times of day." *Id*. at 50–51. Both the grievance *and* the litigation sought compensation for work performed during periods of time for which the union and BOP had collectively bargained that corrections officers would not have to perform work. But that is not the case here.

Unlike in *Allensworth*, in the case at bar, Plaintiffs are not splitting the same *type* of claim across different times of day in some artificial or arbitrary manner. Rather, Plaintiffs—in the government's own words—"allege that they have worked overtime shifts . . . for which they have not been paid night shift differential under FEPA." Def.'s Mot. for Summ. J. at 1. The

---

[5] *See* ECF No. 25 at 45 (Plaintiffs' counsel acknowledging that the "main concern here, and where the Government loses, is on the third prong, the transactional facts.").

settlement agreement in the grievance, by contrast, resolved claims for "overtime compensation pursuant to the [FLSA] for time spent by bargaining unit employees performing work *before and/or after their scheduled shifts* at FCC Lompoc." ECF No. 15-1 at Appx1 (emphasis added). In other words, the grievance resolved FLSA claims related to uncompensated off-the-clock work, while the instant case covers FEPA claims related to compensated on-the-clock work that was allegedly paid at the wrong rate.[6] Thus, the claims brought in this Court, unlike those brought at the grievance stage, do not turn on whether Plaintiffs performed uncompensated work before their shift, after their shift, or during any breaks within their shift. What matters is whether FCC Lompoc paid the *correct amount* of compensation to those employees who were scheduled to work the night shift. As Plaintiffs correctly observe, the settlement agreement "does not discuss or apply to premium payments on work performed ***during*** scheduled shifts." ECF No. 18 at 8 ("Pls.' Resp.").

Moreover, it cannot be said that the same or similar evidence that was necessary to succeed in the grievance would be offered to prove the claims asserted here (or vice versa). Nevertheless, the government argues just that: "[i]ndeed, '[t]he evidence necessary to prove the claims would be similar, and bringing the claims together would have been of desirable efficiency.'" Def.'s Mot. for Summ. J. at 13 (quoting *Allensworth*, 122 Fed. Cl. at 51). Although the Court does not doubt the government's preference for efficiently disposing of Plaintiffs' claims, the evidence offered in the grievance to demonstrate that employees at FCC Lompoc were performing work-specific tasks without compensation while *off-the-clock* would not, in any way, prove Plaintiffs' allegations here that *scheduled* night shift employees were not receiving the premium pay they are entitled to under Title 5. Nor would the grievance evidence of *off-the-clock* work prove that night shift employees working more than 40 hours a week were being shorted in the calculation of their overtime pay under the FLSA. The Restatement may indeed encourage a pragmatic view of transactional facts but that "pragmatism" does not stretch far enough to require employees to bring nearly every possible pay related claim (no matter how unrelated) in a grievance in order to later avoid the preclusion bar.

Finally, to any extent that the government may be correct in its argument that this case presents a straightforward application of res judicata, the Court will not employ the blunt instrument of res judicata—absent "a clear and persuasive basis," *Kearns*, 94 F.3d at 1557—to frustrate Plaintiffs' opportunity to litigate their claims. The Court simply does not see a clear and persuasive basis to preclude Plaintiffs' claims, to the extent there is any basis at all.

It should be noted that the Court does not take issue with the outcome in *Allensworth*, nor does it need to. If Plaintiffs, for example, brought (and resolved) one Portal-to-Portal claim via grievance and another Portal-to-Portal claim here, *Allensworth* would hinder their case. Had Plaintiffs asserted (and resolved) an incorrect overtime calculation claim in the grievance for on-the-clock work, prior to the instant action, *Allensworth* (although not dispositive) once again might prove an obstacle. But those are not the facts of this case. Therefore, partial summary judgment in favor of the government was denied.

---

[6] To the extent the FLSA is relevant in the instant case, it is only with regards to the alleged incorrect calculation of overtime *following* the alleged failure to pay the 10% night shift premium to the subset of employees who worked night shifts at FCC Lompoc.

## CONCLUSION

Consistent with the foregoing reasons, the Court concluded that the government failed to meet its burden of establishing that Plaintiffs' claims for the period before February 20, 2015, are barred by res judicata. Accordingly, the government's motion for partial summary judgment was denied on May 14, 2021. ECF No. 34.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge
